NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-222

COMMONWEALTH

vs.

CARLOS LACEN-SANTIAGO.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Carlos Lacen-Santiago, appeals from his jury convictions of trafficking in ten or more grams of fentanyl, G. L. c. 94C, § 32E (c1/2), and possession of cocaine with intent to distribute, G. L. c. 94C, § 32A (c).  He contends that his motion to suppress should have been allowed because the search warrant affidavit did not establish the veracity of a confidential informant and that at trial the prosecutor misstated evidence in closing argument.  We affirm.

Background.  In July 2021, based on an affidavit of New Bedford Detective Samuel A. Algarin-Mojica setting forth information from a confidential informant (CI), a District Court clerk-magistrate issued a warrant authorizing the search of a

black Honda Accord used by the defendant.  Police executed the warrant and seized evidence including fentanyl and cocaine.

The defendant moved to suppress evidence, arguing that the supporting affidavit failed to establish the CI's veracity because it set forth information about only a single occasion on which the CI had previously provided information that led to an arrest; the information about that arrest was stale because it was five years earlier and did not result in a conviction; the police did not corroborate the CI's tip in this case; and the affidavit did not establish a sufficient nexus between the defendant's drug sales and the Honda.  A Superior Court judge (motion judge) denied the motion to suppress, finding that the case arising from the CI's previous information had been dismissed because of an improper strip search, and not as the result of any issue related to the CI's veracity.

At trial before a different judge (trial judge), Detective Algarin-Mojica testified that while conducting surveillance just before executing the search warrant, he saw the defendant "waiting around" near the Honda for a few minutes with his cell phone.  A man wearing red shorts and a black tank top approached the defendant, who then unlocked the Honda and got into the front passenger seat.  The man reached into the Honda through the front passenger window and put something into his pocket.

2

The police then executed the search warrant and from the Honda seized evidence including 13.65 grams of fentanyl, 0.75 grams of cocaine, three digital scales, a card bearing white residue, and documents in the defendant's name.  Police arrested the defendant and seized three cell phones from a crossbody bag on his person and about $965 in cash from the bag and his pocket.  At the same time, police stopped the man in the red shorts and black tank top and found on his person a plastic bag containing three and one-half grams of fentanyl.

The defendant testified that the Honda belonged to his son, whose name was similar and who had asked him to repair it, and the man who interacted with him was explaining the repairs.  The cash in the defendant's crossbody bag came from a friend for whom he had repaired a boat, and the defendant planned to use it to buy parts for the Honda.  The defendant testified that he did not know there were drugs in the Honda's glove compartment.

The jury convicted the defendant of trafficking in more than ten grams of fentanyl and possession of cocaine with intent to distribute.  The defendant appeals.

Discussion.  1.  Search warrant.  The defendant contends the motion judge erred in denying the motion to suppress the evidence seized pursuant to the search warrant.  The defendant argues that the search warrant affidavit did not demonstrate

probable cause because it did not establish the CI's veracity or a sufficient nexus between the drugs and the Honda.

We review de novo whether there was probable cause for the magistrate to issue the search warrant. See Commonwealth v. Defrancesco, 99 Mass. App. Ct. 208, 211 (2021). Our review "begins and ends with the four corners of the affidavit" (citation omitted). Id. "In order to establish probable cause to issue a search warrant, the affidavit must contain enough information for the issuing magistrate to determine that the items sought are related to the criminal activity under investigation, and that they may reasonably be expected to be located in the place to be searched" (quotation and citation omitted). Commonwealth v. Connolly, 454 Mass. 808, 813 (2009). "The affidavit should be interpreted 'in a commonsense fashion' and 'read as a whole,' rather than 'parsed, severed, and subjected to hypercritical analysis'" (citation omitted). Defrancesco, supra. See Commonwealth v. Andre-Fields, 98 Mass. App. Ct. 475, 481 (2020). "[I]nferences drawn from the affidavit need only be reasonable, not required." Connolly, supra, citing Commonwealth v. Kaupp, 453 Mass. 102, 110-111 (2009).

a. Affidavit. The search warrant affidavit set forth the following facts. The CI, a cocaine user, told Detective Algarin-Mojica that, within seventy-two hours before the

4

detective applied for the search warrant, the CI had purchased cocaine from the defendant. The CI said that the defendant was selling cocaine from a black Honda bearing a temporary license plate that was parked on Morton Avenue, and that the defendant stored cocaine packaged for street level sales in the Honda's glove compartment. The affidavit averred that in the past, the CI had given "detailed and accurate information, which led to arrests and the seizures of several grams of cocaine," referring to a criminal case with a 2016 docket number. The defendant had prior convictions for crimes including trafficking in heroin. Detective Algarin-Mojica confirmed that a Honda matching that description was parked on Morton Avenue near the defendant's apartment and near another vehicle that the CI stated the defendant also used.

b. Veracity prong. The defendant contends that the affidavit did not establish the veracity of the CI because it relied on a single tip that the CI made five years previously, and the police did not corroborate the tip with a controlled purchase.

"When a search warrant affidavit is based on information supplied from an informant, art. 14 [of the Massachusetts Declaration of Rights] requires the [judge] to apply the familiar Aguilar-Spinelli standard." Commonwealth v. Ponte, 97 Mass. App. Ct. 78, 81 (2020). An affidavit relying on

5

information from a CI must provide "some of the underlying circumstances from which the affiant concluded that the information was 'credible' or [the CI's] information 'reliable' (the veracity test)." Commonwealth v. Byfield, 413 Mass. 426, 429 (1992).[1]  The "most common indicator of 'veracity[]' [is] a history of dispensing information to the government which led to convictions or seizure of narcotics." Commonwealth v. Luce, 34 Mass. App. Ct. 105, 108 (1993).  Where that history is absent, "[i]ndependent police corroboration may make up for deficiencies in one or both prongs of the Aguilar-Spinelli analysis," Ponte, supra, citing Commonwealth v. Depiero, 473 Mass. 450, 454 (2016), and that corroboration may include supervised controlled purchases, see Commonwealth v. Valdez, 402 Mass. 65, 71 (1988).

We conclude that the averments in the affidavit that the CI had previously provided information that "led to arrests and the seizures of several grams of cocaine," including reference to the 2016 docket number, sufficed to demonstrate the CI's reliability and thus "satisfy the veracity prong." Commonwealth v. Gonzalez, 90 Mass. App. Ct. 100, 104 (2016) (reliability of

---

[1] The affidavit must also show "some of the underlying circumstances from which the informant concluded that the contraband was where he claimed it was (basis of knowledge test)." Byfield, 413 Mass. at 429.  The defendant does not contest that the affidavit established that the CI satisfied the basis of knowledge test.

CI satisfied by accuracy of past tips). See Defrancesco, 99 Mass. App. Ct. at 212 n.5. Contrast Ponte, 97 Mass. App. Ct. at 82 (search warrant affidavit listed defendant's "arraignments," but not whether they resulted in convictions). In addition, the CI was registered with the New Bedford police department, and the CI's identity and personal information were known to police.

Contrary to the defendant's argument, the passage of five years since the CI provided the prior information did not diminish the CI's veracity. To be sure, an informant's basis of knowledge or the reliability of an informant's specific information may diminish over time. But an informant's veracity is not dulled by the passage of time, which "does not usually erode one's truth-telling propensities." Commonwealth v. DiPietro, 35 Mass. App. Ct. 638, 642 (1993). See Commonwealth v. Santos, 94 Mass. App. Ct. 696, 700 & n.4 (2019) (informant's veracity established by tip seven years before that led to seizure of unlawfully possessed shotgun). "Thus, we do not think that a staleness problem prevented a finding that the informant was reliable." DiPietro, supra.

As for the defendant's argument that the affidavit did not demonstrate the CI's veracity because police did not corroborate the CI's information with a controlled purchase, we are not persuaded. Although in some circumstances a search warrant affidavit demonstrates the veracity of information, particularly

that given by a first-time informant, by corroborating the credibility of the information with a controlled purchase, see Ponte, 97 Mass. App. Ct. at 81-82, that is not required where the informant's reliability is shown by the CI's having previously provided information that led to the seizure of contraband.  Because we have concluded that the affidavit established the CI's veracity, we need not reach the question whether police surveillance of the Honda amounted to independent police corroboration.  See id. at 81.

c.  Nexus between drug sales and Honda.  The defendant next contends that the search warrant affidavit did not show a sufficient nexus between the drugs and the Honda at the time the warrant issued.  He claims that there was "nothing to suggest" that the defendant used the Honda to store or sell drugs.  We disagree.

As mentioned, the search warrant affidavit set forth that, within the previous seventy-two hours, the CI had bought cocaine packaged for sale that the defendant kept in the Honda's glove compartment.  That amounted to probable cause, i.e., "a quantum of proof from which the magistrate can conclude, applying common sense and reasonable inferences, that evidence is 'reasonably likely' to be found in the [Honda]."  Defrancesco, 99 Mass. App. Ct. at 213.  The fact that the police in Defrancesco, see id. at 210, 212-213, also had information that the defendant was

8

previously arrested at his home for a drug offense does not render the quantum of probable cause here insufficient. See Commonwealth v. Torres, 102 Mass. App. Ct. 359, 364 (2023), quoting Commonwealth v. Gentile, 437 Mass. 569, 576 (2002) ("[t]he issue is not the comparative strength of the evidence [to other like cases], but whether the evidence here was sufficient to support a finding of probable cause").

2. Prosecutor's closing argument. The defendant contends that the prosecutor misstated the evidence when she said in closing argument that police found fentanyl in the drug customer's "pocket," because a detective testified that the fentanyl was found "on his person." The defendant did not object to the comment, but claims on appeal the statement created a substantial risk of a miscarriage of justice. We disagree.

"A prosecutor must limit comment in closing statement to the evidence and fair inferences that can be drawn from the evidence." Commonwealth v. Lugo, 89 Mass. App. Ct. 229, 234 (2016), quoting Commonwealth v. Cole, 473 Mass. 317, 333 (2015). We review the prosecutor's remarks "in the context of the entire argument, and in light of the judge's instruction to the jury, and the evidence at trial." Commonwealth v. Sanders, 101 Mass. App. Ct. 503, 511 (2022), quoting Commonwealth v. Braley, 449 Mass. 316, 328-329 (2007).

9

At trial, Detective Algarin-Mojica described the defendant's interaction with the man in the red shorts and the black tank top.  After the man reached into the Honda's front passenger-side window where the defendant was sitting, "[h]e placed an item into his left-hand pocket."[2]  Detective Jordan DaSilva then testified that he searched the man and found "on his person" a bag of fentanyl.  The jury could reasonably infer that the bag of fentanyl that Detective DaSilva found on the man's person was the item that Detective Algarin-Mojica had seen the man place in his pocket, and thus the prosecutor's argument was a fair inference based on the evidence.  See Commonwealth v. Ortega, 441 Mass. 170, 181-182 (2004).  See also Commonwealth v. Nova, 101 Mass. App. Ct. 1, 9 (2022) (inference that ringing

_____

[2] The transcript reflects that Detective Algarin-Mojica testified that the man placed the item in his "left-hand pocket," but the prosecutor then referred to it as the man's "left pant pocket."  The discrepancy is immaterial to our analysis.

cell phone belonged to defendant was "reasonable, though not inescapable").

Judgments affirmed.

By the Court (Massing, Singh & Grant, JJ.[3]),

Clerk

Entered: July 1, 2026.

---

[3] The panelists are listed in order of seniority.